Thank you, Your Honors. Our next case for argument is Owsley v. Corbett. Mr. Huzzynski. Good morning, Your Honors. May it please the Court, my name is John Huzzynski. I represent the plaintiff's appellant, Logan Owsley. The only question the Court must resolve in this appeal is whether Logan has Article III standing to pursue his claims that the defendant violated his rights under the U.S. Constitution and federal civil rights statutes by concealing and destroying evidence that his father was murdered. The answer is that Logan does have standing for three reasons, each of which is independently sufficient to require reversing the judgment of the District Court. First, Logan has standing as an assignee of the estate's entire interest in the federal office. Mr. Owsley, I would like you to focus on the question whether there is any federal right to be the beneficiary of a criminal investigation of somebody else. The Supreme Court has held multiple times that there is no constitutional right to the enforcement of the law, and it said that both as a matter of standing in cases like Linda R.S. against Richard D., and as a matter of substance in cases like DeShaney against Castle Rock. It appears to me that your theory is that your client suffered because there was an inadequate public investigation, and if there is no right to any criminal investigation, I wonder what becomes of your theory. No, Your Honor. That's not the underlying constitutional violation here. The constitutional violation in this case resulted from the concealment and destruction of evidence that denied Logan access to the courts in the form of a state's wrongful death action. All right. If you want to describe this solely as the destruction of evidence, the next question in line is, why isn't that an issue to be litigated in state court? One different way of understanding the nature of the claim here is that it amounts to a federal issue removal of a potential discovery dispute in the state litigation. You allege what could be called spoliation of evidence. Normally, a spoliation dispute is one to be handled in discovery. It's not a reason for litigating an independent claim in a different legal system. Why is this case any different from that norm? This case is entirely different, Your Honor, because as this court has repeatedly acknowledged, the denial of access to court encompasses the frustration of claims even when the courthouse door is not literally barred. And although it's certainly true that there are rules of, perhaps state law rules of criminal procedure and perhaps with civil procedure that would allow recourse in these circumstances, but what transpired in this case is the paradigmatic denial of access to court claims. Counsel, I wish you'd go back to my question. I think it's agreed that the courthouse doors were not closed, but that the plaintiff believes that he had trouble accumulating evidence, that it might have been destroyed. The question I'm asking is why that isn't a dispute to be handled in discovery in the state litigation. I am not happy with the concept that every time there is a potential discovery dispute in a case with state actors as defendants, the federal courts will entertain separate litigation under the heading of access to the courts to resolve the discovery dispute. Your Honor, first of all, it's worth emphasizing, I think, that the misconduct in this case was extreme and pervasive beyond the scope of what could be fairly called a normal discovery dispute. Instead, the misconduct in this case approaches the level of misconduct and ongoing efforts to conceal the circumstances of the deceased's death that parallels the circumstances of this court's decision in Bell v. City of Milwaukee. Acknowledging, applying that precedent, as well as more general standing precedent, that Logan has suffered an injury, a cognizable injury, does not open the doors to converting state law actions, every state law procedural dispute, into a federal claim. Instead, it's simply to acknowledge that the federal civil rights statutes were enacted to counteract and deter abuses of state authority, including ones that involve the manipulation of state court proceedings. When that manipulation of proceedings is sufficiently egregious so as to destroy a lawful claim, leaving the civil rights plaintiffs without recourse in the state courts, then there is a cognizable federal claim. It's also worth noting that in the context of this case, the facts and circumstances are unique in multiple respects. The plaintiff here, Logan, is the assignee of the estate's entire interest in this lawsuit. Not only that, he's the beneficiary of the estate, and the Indiana State Legislature has acknowledged that the estate's beneficiaries are the individuals who should benefit from a lawful death action. But even if this court were uncomfortable with accepting Logan's standing as a beneficiary or assignee for any reason, he still has standing entirely independent of the claims for denial of access to court because of his claims under Section 1985 and 1986. This court's precedent, as well as important cases interpreting those statutes, make clear that they create a remedy for injuries to personal property, where that phrase is interpreted simply to refer to injuries that are known and familiar to court law. Here in this case, Logan has alleged an injury, in particular emotional distress, an injury that is familiar to court law. So notwithstanding any conclusion this court comes to about the denial of access claims, reversing and remanding the district court's judgment is still required so that those claims alleging a conspiracy to obstruct justice and to deny equal protection can be litigated in the federal court. Mr. Hazinski, are you asking the court to make its standing determination with regard to the 1985 and 1986 claims irrespective of the Indiana statute here? I believe the answer is that the Indiana statute does not implicate standing under Section 1985 and 1986 for the simple reason that the Indiana statute specifying who may bring a wrongful death action is a procedural mechanism designed to streamline the prosecution of wrongful death actions. It does not and cannot reasonably be interpreted to limit the scope of relief under federal civil rights law. I see that I've used a little over eight minutes. Unless the court has questions, I'd like to reserve the remainder of my time for rebuttal. Certainly, counsel. Ms. Barron. Thank you, Your Honor, and may it please the court, Lisa Barron, on behalf of the defendants at least. I'd like to first address an issue that was just brought up with the last round of questioning regarding standing for the wrongful death action and have it being characterized as a procedural mechanism. That simply is not correct. Under Indiana law, the individual's position to bring a wrongful death claim is the personal representative of the estate, and they must do so within two years of the date of the accrual. And those are not just merely procedural. They are substantive conditions precedence in order to bring it to. So with respect to being able to try and hook that together to assert a 1985 and 1986 claim in an individual capacity, this plaintiff doesn't have any standing here because those particular claims are to be brought by the estate and not relative of the decedent. Why isn't that a capacity issue governed by federal rule of civil procedure 17 and therefore a federal issue, not a state issue? Your Honor, it's not governed by federal rule 17 because of the unique requirements of the Indiana statute, because the claim here that the plaintiff is claiming that they have lost the right to bring is a state law wrongful death claim. And in that regard, only the personal representative can bring it within two years, and it's not a matter of swiping or switching out an individual in changing titles, for example, in a matter where someone starts litigating a lawsuit and that party passes away and you need to name another person. Does that answer your question, Judge? I'm not sure. So are you saying that the estate, that the court could never assign a wrongful death action to someone to pursue outside of the personal representative of the estate? Yes, Judge, that's exactly what is called for under the Indiana probate code, and that leads into counsel's other argument concerning assignments of the claim. In Indiana, Indiana law prohibits assignees from asserting claims that must be brought by the personal representative of the estate. Have I now answered your question, Judge Saini? I think so. Thank you. Looking to the assignment issue, plaintiff does not get standing by assignment for three main reasons. The first being that the assignment that the plaintiff received did not assign to him the underlying cause of action for wrongful death that he would need to pursue this lawsuit. The language of that assignment only assigns an interest in the proceeds. It does not say anything about a cause of action or making the plaintiff the personal representative or special administrator to pursue that claim. So from that perspective, the assignment doesn't assign the plaintiff the cause of action or this federal lawsuit either. How do you read that out? The assignment is fairly broad. It says, whatever interest the estate of Kerry Ostley had in the federal lawsuit, the court assigned such interest to Logan Ostley. That's very broad. How do you take away your reading of that? I believe looking just to that sentence, we need to look at the entire order itself because the next sentence after that clarifies by explaining that Mr. Ostley was to receive the proceeds and inherit them alone. Also, at the time of that assignment, the federal lawsuit that was pending was an individual capacity claim that was being pursued by Mr. Ostley. The estate, his father's estate, was not a party to that lawsuit. There had already been decisions down in the state probate court below determining that there was no cause of action, in fact, for the estate of Kerry Ostley to pursue against anyone for his death. Have I answered your question, Judge? You are reading that second sentence then to limit the first. That's correct, Judge. We are. And also, it shouldn't be forgotten that in that same order, the court actually denied plaintiff's request to become appointed personal representative and also a request to become the special administrator. And so opted only to give him that interest in the proceeds or the abandoned property. Ms. Barron, can you educate us on this idea of the probate court in Indiana's determination with regard to whether this was a suicide or a homicide? It seems this, whether or not that's a conclusive presumption, is going to be, at least factually, it's been in dispute. We do have some court rulings from the Bartholomew County's court. But has there ever been any determination, a final determination, or is it just a series of orders in 2014 and 2015 with regard to the various probate issues? Okay, let me take that in part, Judge. There are two different proceedings that went on in Bartholomew County. There was the disinterment proceeding, which looked into whether, which the body was exhumed. And there was forensic pathologists who were called upon to determine the cause of death and their findings. In that one, there was a court-appointed forensic pathologist that offered commentary determining that ultimately the cause of death was undetermined. But in that same report, the pathologist concluded that the gunshot, there were gunshot particles in the wound, and they therefore indicated a contact wound. And therefore, it was suicide, as well as making, to the reasonable degree of medical certainty, a conclusion that it was not a homicide. Separately, in the probate proceedings, which again, were also in the Bartholomew County court, there were orders that were made to make a determination about whether or not there was a cause of action that lied against anybody else for Carrie Owsley's death. So those orders that concluded that there was no cause of action to be pursued against anyone else for the death of Carrie Owsley were final and binding orders on Mr. Owsley, Logan Owsley in particular, because he is an interested person under the Indiana probate code, and that makes those orders final and binding on him. And they also denied him personal representative status more than one time. Has that answered your question? Yes, I believe you're referring to Judge Hyman's orders in April of 15 and May of 14, is that correct? Yes, that's correct. Thank you. Yes, you have. Just to speak a little bit to the argument regarding whether a beneficiary under Indiana law has standing to sue for a denial of access on behalf of an estate. The probate code is clear on that issue as well. Indiana law does not allow beneficiaries to bring wrongful death actions in their own right. Only the personal representative or a special administrator who are empowered under the probate code can bring such actions. And those decisions must be determined in the state probate court. And in this instance, if there is a beneficiary that feels a cause of action is not being pursued on behalf of the estate, they have every right under the probate code to go in, intervene in those proceedings, and have the presenter case there to the probate judge. As part of what the probate courts do here in Indiana, to either have a personal representative removed, have a special administrator appointed. And in this case, that happened and the probate court declined plaintiff's request to become the personal representative and also to have a special administrator appointed for the purpose of bringing any causes of action on behalf of the estate of his father. So to the extent that plaintiff is saying that he personally had no access to the court, he had ample access in the courts below. If there are no further questions from the court, I will conclude by stating simply that the district court correctly concluded that this plaintiff lacked Article III standing to pursue any of the claims in this lawsuit. The district court interpreted Indiana's substantive law correctly and concluded in a succinct opinion that the plaintiff had suffered no injury in facts and properly dismissed this case for lack of subject matter jurisdiction. Plaintiff's arguments present no reason to disturb the district court's findings, and therefore this court should affirm. Thank you. Thank you, counsel. Anything further, Mr. Kuczynski? Yes, Your Honor. The defendant cannot explain away the assignment of the estate's entire interest in this lawsuit to Logan. Ms. Barron, in her argument today, focused at length on the issue of capacity. It's important to distinguish capacity for Rule 17 purposes from the question of Article III standing, which is, in the absence of a profit deal, this court's focus in this appeal. Even if the court were to reach the question of capacity, the proper conclusion is that Logan does have the proper capacity because, as an assignee, he is a real party in interest. In any case, any disputes about capacity are appropriately resolved by the district court in the first instance, particularly in light of Rule 17's admonition to avoid dismissing cases for improper capacity prematurely. With respect to the assignment itself, the language of the assignment that was read during Ms. Barron's argument is sweeping, and it defines the estate's entire interest in this litigation. There's no coherent reading of that assignment in that order that would limit it in any way to merely a residual interest in the proceeds of the litigation for several reasons. First of all, the language itself is on its face quite sweeping, but the context is revealing as well. Logan sought the distribution of that property from the estate precisely because the estate was not pursuing a federal civil rights action, and it is in that context that the court made this assignment. To conclude otherwise and say that the estate's actual cause of action had not been assigned to Logan would effectively nullify and invalidate that assignment. To such an extent that it would implicate Rooker-Feldman and similar problems of comity with state courts. The assignment remains valid, moreover, because the estate did have an interest in this case. The theory of denial of access court, which draws on this court's ruling in Bell v. Milwaukee, is based on the concealment and destruction of evidence that defeats the viability of the state court. The state, to the extent that the defendants believe that the estate has suffered an injury that is cognizable as opposed to Logan, then that complete interest in that claim was assigned to Logan. He not only has Article III standing, but the rest of the capacity to pursue those claims. In addition, there was some discussion as well of the effects of further state court litigation and how they might implicate this case. A couple things to bear in mind. First is that when the court is considering the question of standing, it need not consider whether there may be issue preclusive effects that undermine the merits of the plaintiff's claims later on. Those issues are not before the court in the absence of the process field and they haven't been briefly discussed by the parties. Significantly, the notion of applying issue preclusion in the context of a case like this is, in my view, wrongheaded. As this court explained in Bell v. City of Milwaukee, which relied on somewhat analogous facts, cases of state court proceedings that represent a continuation of the defendant's effort to conceal what really happened, cannot and should not bind the plaintiff in a subsequent federal civil rights case for obvious reasons. The premise of the suit is that the plaintiff was denied the opportunity to adequately pursue his or her claims through state court action. In Bell in particular, an inquest did in fact make a conclusive determination about the circumstances of the defendant's death and said that the defendant and police officers had acted with self-defense. Even there, where there is a considerably more conclusive determination of the underlying factual dispute, the court said, still, issue preclusion is inappropriate in this context. There are further reasons why any state court proceedings relating to discussing the cause of Harry's death should not bind the parties in this litigation. Among them are the fact that Logan was not a party to those proceedings at that point, meaning that there's no identity of parties. It can't be said that there was a full and fair opportunity to litigate in light of the defendant's efforts to conceal the truth. And it wasn't necessary to the court's judgment, in the sense that the court was merely making decisions in those cases about administering these states' jurisdiction properties.  Thank you, Your Honor. Thank you. Before I conclude, I would also like to emphasize once more that this is an exceptional and unique set of facts in which the federal courts are being asked to adjudicate not a routine discovery dispute relating to state court litigation, but a protracted and systematic effort to cover up the allegedly racially motivated murder of a black man through the manipulation of state court proceedings. This falls squarely within the ambit of federal civil rights statutes and the type of misconduct that they are intended to deter. Logan has suffered an injury in the meaning of Article 3. And because that's the extent of the court's inquiry in this appeal, we ask that the court reverse the government. Thank you, counsel. Thank you. The case is taken under advisement.